Marian F. Harrison
US Bankruptcy Judge

Dated: 07/03/12

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 305-00148 |
| TRAILER SOURCE, INC., | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) |

_____

**MEMORANDUM OPINION**
_____

This matter is before the Court upon the U.S. Trustee's objection to the application for compensation filed by Harwell Howard Hyne Gabbert & Manner, P.C. (hereinafter "H3GM"), special counsel to the Trustee, and Hyundai Translead, Inc.'s (hereinafter "Hyundai") objections to the Trustee's application for compensation and the Trustee's motion for allowance of claims. For the following reasons, which represent the Court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 7052, the Court finds that the objections should be overruled and the motions granted.[1]

---

[1] To the extent no objections were raised, this Court entered orders on June 1, 2012, partially granting H3GM's application for compensation and the Trustee's motion for allowance of claims.

## I. FINDINGS OF FACT

This case has a long litigious history. Hyundai filed suit in District Court against Jackson Truck & Trailer Repair, Inc., et al. (hereinafter "JT&T") on June 30, 2004. Then, on January 6, 2005, Hyundai forced the debtor into Chapter 7 by filing an involuntary petition. The order of relief was entered on February 14, 2005, and Samuel K. Crocker (hereinafter "Mr. Crocker") was appointed as Trustee. On June 8, 2011, David G. Rogers (hereinafter "Trustee") was appointed as successor trustee.

Prior to the successor appointment of the Trustee, there was significant litigation in this Court and the District Court, with some issues going to the Sixth Circuit Court of Appeals. The majority of the litigation dealt with whether Hyundai should be allowed derivative standing to investigate and pursue potential fraudulent transfer claims against JT&T and whether Mr. Crocker should be allowed to settle any claim against JT&T for $50,000. Eventually, the District Court held that Hyundai was entitled to derivative standing and set aside this Court's approval of the settlement agreement between Mr. Crocker and JT&T. The District Court was affirmed by the Sixth Circuit Court of Appeals on February 6, 2009, as to the derivative standing issue, and the litigation in District Court has continued on behalf of the estate.

When the Trustee was appointed successor trustee, he filed an application to retain himself as counsel, which was granted on July 5, 2011. By the time the Trustee became

2 - U.S. Bankruptcy Court, M.D. Tenn.

involved, the District Court case had been pending for approximately seven years, and the bankruptcy case had been open for over six years. In both courts, the litigation between Hyundai and JT&T has been protracted and acerbic. At a status conference in District Court on November 18, 2011, the parties were strongly encouraged to discuss settlement, and the Trustee was encouraged to take a more active role in exploring the possibility of settlement. After the status conference, the Trustee filed an application to employ H3GM as special counsel, which was granted on December 16, 2011.

Any settlement needed to be reached expeditiously because the trial in District Court was set for July 2012, and because the Trustee and H3GM felt that the more the parties invested in discovery, the less likely a settlement would be possible. The Trustee and H3GM were required to make an independent evaluation of the factual and legal issues of this case after they studied the procedural history of the case. Because the majority of the litigation had revolved around Hyundai's derivative standing, the development of evidence was sparse, and the Trustee soon learned that Hyundai had made little progress on developing proof necessary to prevail on the fraudulent transfer claims. In addition, the District Court litigation involved a number of novel and complex legal issues, including the res judicata effect of prior settlements, the role of the Trustee in derivative litigation, the applicable look-back period for avoidance of transfers, and claims against non-party transferees. Despite these obstacles and time constraints, the Trustee and H3MG evaluated the merits of these issues, held settlement conferences with the parties, and successfully translated the

3 - U.S. Bankruptcy Court, M.D. Tenn.

results of their efforts into a global settlement of $3 million. These results were achieved efficiently and almost single-handedly by the Trustee and one attorney from H3GM. Hyundai was routinely represented by three or more attorneys, and JT&T involved two and sometimes three attorneys. Prior to the involvement of the Trustee and H3GM, Hyundai and JT&T, with their multiple attorneys, failed to reach a settlement, despite two formally-mediated settlement conferences. The undisputed testimony was that the case would never have settled but for the efforts of the Trustee and H3GM.

## II. DISCUSSION

### A. FEE APPLICATION FOR SPECIAL COUNSEL

The U.S. Trustee objects to H3GM's request for a fee enhancement in the amount of $26,968.[2] The U.S. Trustee does not dispute that the fees requested by H3GM for actual time spent, at the hourly rates reflected in its employment application, which total $125,638, are fair and reasonable. However, the U.S. Trustee does object to H3GM receiving a bonus or fee enhancement in addition to this amount because H3GM has not established that the sum of $125,638 is unreasonable for the services it provided to the Trustee.

Under the Bankruptcy Code, professionals are to be paid "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1). The Supreme Court has

---

[2]Hyundai does not object to the fee enhancement requested by H3GM.

recognized the lodestar method (reasonable hourly rate times number of hours reasonably expended) as the method by which federal courts should determine the reasonableness of attorney's fees, ***Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*** 483 U.S. 711 (1987) (hereinafter ***"Delaware II")***, and the Sixth Circuit has adopted the lodestar method in bankruptcy cases. ***Boddy v. United States Bankruptcy Court (In re Boddy),*** 950 F.2d 334, 337 (6th Cir. 1991).

The lodestar method is not always the end of the fee inquiry. The Court has the discretion to adjust the fee upward or downward according to other considerations, ***Hensley v. Eckerhart,*** 461 U.S. 424, 434 (1983), but there is a strong presumption that enhancement fees are reserved only for "rare" and "exceptional" cases. ***Pennsylvania v. Delaware Valley Citizens' Council for Clean Air***, 478 U.S. 546, 565 (1986) (hereinafter ***"Delaware I")***. The applicant has the burden to show that a fee enhancement is warranted. ***In re Arter & Hadden, LLP,*** No. 03-23293, 2011 WL 3422788, at *2 (Bankr. N.D. Ohio Aug. 4, 2011) (citations omitted). Where fee enhancements are justified, the Supreme Court has held that the additional amount should not exceed one-third of the lodestar amount. ***Delaware II,*** 483 U.S. 711, 730.

There is precedent within the Sixth Circuit to approve enhancement fees over and above those fees awarded under the lodestar method. ***See In re Wright Air Lines, Inc.,*** 147

5 - U.S. Bankruptcy Court, M.D. Tenn.

B.R. 20, 22 (Bankr. N.D. Ohio 1992) (fee premium of $20,000 justified where applicant turned case with no assets into one with over $3 million), and ***In re Chary***, 201 B.R. 783, 788 (Bankr. W.D. Tenn. 1996) ($17,500 fee enhancement awarded to trustee's counsel where, due to counsel's efforts, no-asset case transformed into asset case with creditors receiving approximately 40% distribution).

The Court finds that the present case is rare and exceptional and that the fee enhancement requested by H3GM is justified. It is true that but for the efforts of Hyundai, the estate would have received only $50,000 from JT&T in a settlement brokered by Mr. Crocker. However, the rejection of that settlement also created the risk that the estate would end up with even less than the $50,000. From the history of this case, it is clear that Hyundai never would have resolved the dispute with its "scorched earth" approach, the result being prolonged litigation. Thus, without the Trustee and H3GM, there was no serious possibility of settlement, and there was no guarantee that going to trial would have resulted in any funds for the estate. As it stands, the Trustee and H3GM managed to broker a $3 million settlement for the benefit of the estate in less than a year, which was substantially in advance of the trial date set in District Court. Moreover, H3GM undertook representation of the Trustee at substantial risk of non-payment, particularly in light of the previous failed attempts at settlement and the animosity between the parties. The District Court litigation could have left the estate insolvent but for the monumental efforts of H3GM and the Trustee.

Moreover, even if the circumstances of this case were not considered exceptional, the Court would find that under the lodestar method, H3GM's fees are at the low-end for attorneys with comparable experience in bankruptcy, litigation, and transactional work and that the upward adjustment is necessary to ensure that reasonable compensation is paid in this particular case.

### B. FEE APPLICATION FOR THE TRUSTEE AS COUNSEL

Hyundai asserts that the Trustee's fee is unreasonable pursuant to 11 U.S.C. § 330(a)(3) and that the fees are duplicative of the Trustee's duties and of H3MG's services as prohibited by 11 U.S.C. § 330(a)(4)(A).[3]

### 1. 11 U.S.C. § 330(a)(3) - REASONABLENESS

As stated earlier, professionals are to be paid "reasonable compensation for actual, necessary services rendered," 11 U.S.C. § 330(a)(1), and the lodestar method (reasonable hourly rate times number of hours reasonably expended) is the method by which the reasonableness of attorney's fees are determined. ***Delaware II,*** 483 U.S. 711; ***In re Boddy,*** 950 F.2d 334, 337. The lodestar amount may then be adjusted upward or downward based on other qualitative factors. ***Id.*** at 338. ***See also Hensley v. Eckerhart,*** 461 U.S. 424, 434. Qualitative factors may include:

---

[3] The U.S. Trustee does not object to the Trustee's fees.

7 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:05-bk-00148   Doc 237   Filed 07/05/12   Entered 07/05/12 08:29:42   Desc Main
Document      Page 7 of 13

1. the requisite time and labor;
2. the novelty and difficulty of the issues;
3. the requisite skill;
4. the preclusion of other employment;
5. the customary fee;
6. the risk incurred;
7. time limitations;
8. the amount involved and the results obtained;
9. the experience, reputation, and ability of the trustee;
10. the desirability of the case;
11. the nature and length of the case; and
12. the results obtained in similar cases.

*In re Ohio Indus., Inc.,* 299 B.R. 853, 858 (Bankr. N.D. Ohio 2003) (citations omitted).

The Trustee's application provides detailed time sheets of the work performed. Based on the extensive procedural history of this case, it was necessary for the Trustee to spend a considerable amount of time getting up to speed. As part of this, the Trustee had to determine what proof had been established and what proof still needed to be developed. Based on his work, the Trustee quickly realized that Hyundai had performed work on procedural issues (mostly the derivative standing issue) but had made little progress on developing proof necessary to prevail in the fraudulent transfer action against JT&T. In fact, Hyundai had not considered a number of issues that could potentially be fatal to or seriously undermine the value of any fraudulent transfer claims against JT&T. The Trustee needed to address these issues and evaluate the strengths and weaknesses of the case in order to comply with the District Court's suggestion that the Trustee become more involved in the settlement discussions and facilitate a resolution.

8 - U.S. Bankruptcy Court, M.D. Tenn.

In many ways, Hyundai's actions and/or inactions increased the amount of time the Trustee was required to spend on this case. In particular, Hyundai did not recognize the Trustee's authority or role in the District Court litigation and failed to provide witness information, specific documents, and legal theories supporting any claims. Moreover, the District Court encouraged the Trustee to become more involved in settlement negotiations as an objective third party, and this mandated that the Trustee evaluate the strengths and weaknesses of the case.

Based on the pleadings and the testimony, the Court finds that the Trustee's hours in this case were more than reasonable. The Court notes that Hyundai did not present any proof at the hearing nor did it specify particular line items it believed to be unreasonable.

### 2. 11 U.S.C. § 330(a)(4) - DUPLICATIVE SERVICES

Pursuant to 11 U.S.C. § 330(a)(4)(A), compensation is not allowed for "unnecessary duplication of services" or "services that were not . . . reasonably likely to benefit the debtor's estate; or necessary to the administration of the case." After reviewing the itemized list of fees submitted by the Trustee and H3GM, the Court was unable to find any services that were duplicative as prohibited by 11 U.S.C. § 330(a)(4)(A)(i), and Hyundai did not present any proof to the contrary.

As explained through the Trustee's testimony, many of the meetings required him to act as Trustee for some aspects and as counsel for the Trustee for other aspects, and the Trustee divided his time accordingly. The Trustee testified that he apportioned a greater amount of time expended as attorney for the Trustee because of the multiplicity of legal issues and the need to act as co-counsel with H3GM. Moreover, serving as co-counsel with H3GM was not unreasonable nor duplicative. The undisputed testimony is that Hyundai always had three (or more) attorneys working on the case, and JT&T routinely had two or three attorneys as well. By contrast, the Trustee and one attorney from H3GM carried the primary workload of this case, saving substantial resources for the benefit of the bankruptcy estate. The bankruptcy estate was certainly entitled to the same quality and level of representation as the other parties involved in the litigation, and it obviously worked because the Trustee and H3GM were able to broker a $3 million settlement. Accordingly, the Court finds that the Trustee's fees for serving as counsel were not duplicative.

## C. FEE APPLICATION FOR THE TRUSTEE AS TRUSTEE

Hyundai also objects to the Trustee's request to approve his claim, in his trustee capacity, for a commission in this case. Hyundai asserts that this claim is unreasonable and duplicative of the Trustee's application for fees as counsel for the Trustee.[4]

A trustee's compensation is limited both by its reasonableness under 11 U.S.C. § 330 and the percentage cap set forth in 11 U.S.C. § 326(a). The maximum fee permitted is not meant to be a presumptive fee for trustees. *In re Ohio Indus., Inc.,* 299 B.R. 853, 856 (citations omitted). "The percentage is not a starting point or an expectation. Instead, § 326(a) sets forth 'the maximum compensation payable to a trustee.'" *Id.* at 857 (citation omitted). The cap is only implicated once the requested compensation has been found reasonable. *Id.* (citation omitted). Accordingly, the Court must first determine under 11 U.S.C. § 330 if the fee is "reasonable" based on the services performed in the case. *In re Moss*, 320 B.R. 143, 152 (Bankr. E.D. Mich. 2005).

The Court finds that, using the lodestar method as previously discussed, the amount of compensation requested by the Trustee for his services as trustee is reasonable and was for necessary services that he actually performed on behalf of the estate.

---

[4]The U.S. Trustee informed the Court at the hearing that trustees in this District routinely receive the full commission, and the U.S. Trustee did not object to the Trustee receiving the full commission in this case.

11 - U.S. Bankruptcy Court, M.D. Tenn.

As required by Fed. R. Bankr. P. 2016(a), the Trustee's application set out "(1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The Trustee delineated the time spent by himself as counsel and as trustee in his fee application, and he explained how he reached these numbers through his testimony. Based on the procedural history and circumstances of this case, as discussed above, the amount of time spent by the Trustee as trustee was reasonable as was his apportionment of trustee and attorney time.

Moreover, this is a case where the lodestar fee amount should be adjusted upward to the maximum allowed under 11 U.S.C. § 326. The Trustee testified that this was one of the riskiest cases he had administered in 23 years of serving as a panel trustee. It was highly probable that there would be no money to recover for the estate if this litigation had run its course. Moreover, even if there had been a judgment in favor of the estate and there had been collectible funds from JT&T, the delay in payment to unsecured creditors would have been great. The first responsibility of a trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). In this case, the Trustee was able to accomplish in less than one year that which the parties had not been able to accomplish in the seven years prior to the Trustee's appointment. Only through hard work was the Trustee able to help quickly settle the claim against JT&T for $3 million and ensure that unsecured creditors received some payment.

## III. CONCLUSION

For the reasons stated above, the Court finds that the objections of the U.S. Trustee and Hyundai should be overruled and the motions of H3GM and the Trustee should be granted in full.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page**

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.